# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| JEFF WYCOFF, | ) |
|                     Plaintiff, | ) Civil No. 2015-70 |
|                v. | ) |
| JACK GABELHAUSEN, JR., THE ESTATE OF JUDITH LEE GABELHAUSEN, and JIM SCHUELER, | ) |
|                   Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Jeff Wycoff's motion to compel trial video depositions. [ECF 213]. Defendants opposed the motion [ECF 214] and plaintiff replied [ECF 219].

## I. BACKGROUND

Plaintiff, a resident of Iowa, along with other Iowa and Arizona residents, visited St. Thomas, U.S. Virgin Islands in March 2014, to attend a wedding. Plaintiff was allegedly severely injured at defendants' rental property when he fell from the edge of a pool, dropping some 30 feet to the ground below.[1] [ECF 23] ¶¶13-14.

On April 22, 2016, at an initial pretrial conference, the parties discussed that the fact and medical witnesses were located in several states on the mainland, and that discovery was likely to be extensive. At the conclusion of the conference, the Court entered a Trial Management Order ("TMO") setting forth a schedule for the completion of discovery, motion practice and trial. [ECF 36]. That schedule provided for fact discovery to be completed in April of 2017, expert discovery to be completed by September 1, 2017, and trial to commence in January 2018. *Id.*

The parties engaged in extensive discovery following that initial conference. Among the depositions defendants noticed were: Joni Pierson (taken January 25, 2017); Julia Fulton (taken

---

[1] Plaintiff alleges that he has become a paraplegic as a result of the fall. [ECF 23] ¶14.

January 25, 2017); and Jillian Majerus (taken January 26, 2017). At a status conference in April 2017, the parties reported that they had completed many of the fact witness depositions, with only four remaining to be taken. They sought, and were granted, slight modifications of the discovery schedule pertaining to mediation and expert disclosure dates. The date to complete all discovery remained September 1, 2017. *See* [ECF 117]. On June 29, 2017, the parties participated in mediation, which was not successful. [ECF 142]. The parties thereafter continued to identify experts and schedule expert depositions.

In September 2017, the Virgin Islands – and counsel -- suffered extensive damage from Hurricanes Irma and Maria. As a result, on October 19, 2017, defendants filed a "consent motion" to extend certain deadlines the Court had previously set. [ECF 164]. Defendants sought to extend not only those deadlines that had not already passed as of September 6, 2017, but also the time for taking expert depositions. In its Order of December 4, 2017, the Court extended certain pretrial filing deadlines, allowed the taking of expert depositions on "mutually agreeable dates," and rescheduled trial for March 19, 2018.[2] [ECF 165]. Trial was then rescheduled for April 23, 2018. [ECF 169]. The parties continued to take expert discovery and engage in motion practice through January and February 2018.

On March 8, 2018, plaintiff filed the instant motion to compel defendants to participate in videotaped trial depositions of fact witnesses Pierson, Fulton and Majerus, who had previously been deposed in January 2017. He also seeks to compel defendants to participate in videotaped

---

[2] Defendants had originally sought an additional five months to complete discovery and take the matter to trial. [ECF 164]. After the Court issued its December 4, 2017 Order, defendants sought reconsideration [ECF 166], and on December 29, 2017, the District Court extended the dispositive and *Daubert* motion filing date to February 8, 2018, and reset the trial for April 23, 2018. [ECF 169].

depositions of four of plaintiff's (unnamed) "treating physicians" in Iowa, and the emergency room doctor who treated plaintiff on St. Thomas in March 2014, and who is now located in Tennessee.[3]

Plaintiff argues that he should be able to compel the taking of these depositions for five main reasons. First, plaintiff contends that these witnesses are unavailable. [ECF 213] at 2 ns.2-4, 7-8.[4] Plaintiff states further that he "chose not to incur the expenses to take these depositions until all efforts at settlement had been exhausted." *Id*. at 3. With respect to the three fact witnesses who had been deposed in January 2017, plaintiff claims "the jury would be better served by viewing a videotape deposition rather than have a transcript read to them," and it "was premature for Plaintiffs [sic] to ask trial questions of these witnesses at that early date." *Id*. at 5. Finally, plaintiff argues that Local Rule of Civil Procedure 26.3(b) requires defendants to agree to the taking of the treating physicians' depositions.[5] *Id*. at 5-6.

For their part, defendants point out that, apart from certain limited, court-approved exceptions, the deadline for the completion of fact discovery only extended until June 1, 2017, and that plaintiff did not propose taking the treating doctors' depositions until January 2018, after the deadline for all discovery had passed. [ECF 214] at 1-2. Next, defendants contend it would be an "extraordinary burden on the defense, in both time and expense," for counsel to be required to return to the mainland for repeated or additional depositions. *Id*. at 3, 4.[6] Further, defendants

---

[3] Plaintiff also contends it will be necessary to take the videotaped trial deposition of the person who filmed plaintiff's "day in the life" video, if defendants refuse to agree to the authenticity of the video. [ECF 213] at 6. Plaintiff does not indicate whether he has yet made a request to that effect.

[4] Plaintiff claims these witnesses live outside the subpoena power of the court, and that the treating doctors either have "busy" practices, or are retired. [ECF 213] at 2 ns.2-4, 7-8. Plaintiff also claims "there are not sufficient available lodgings on St. Thomas for these witnesses" during the time trial is scheduled. *Id*. at 7-8.

[5] Plaintiff also contends that if the treating physicians' schedules are not compatible with counsel's, then defendants must allow an attorney other than lead counsel to attend these depositions. [ECF 213] at 8.

[6] Defendants also point out that participation in trial depositions by telephone would not be a reasonable

argue that some of the fact witnesses are plaintiff's family members, who previously indicated under oath that they would be available for trial when it was scheduled to take place in January. The lack of any explanation for the claimed change in availability, argue defendants, undermines plaintiff's current claim of unavailability. *Id.*

With respect to the medical depositions, defendants argue that the bulk of these should have been scheduled to take place at the same time as the fact depositions were taken in Iowa. *Id.* at 5. Moreover, defendants do not interpret Local Rule 26.3(b) in the same way that plaintiff does, and they cite Federal Rule of Civil Procedure 26(c)(1) for the proposition that the court should protect them from "undue burden or expense." *Id.* Further, defendants contend that when their attorney told plaintiff's counsel she did not intend to depose the emergency room physician currently living in Tennessee, plaintiff's counsel advised that she would be bringing him to testify at trial. *Id*. at 6. Finally, defendants argue that plaintiff has not sought to enlarge the discovery period, and that he has failed to demonstrate excusable neglect warranting the desired enlargement. *Id*. at 6-7.[7]

## II. APPLICABLE LAW

This Court has previously addressed the issue of parties seeking to take "trial depositions" after the close of discovery. In *Figueroa v. Bonneville Contracting & Technology Group, Inc.,* 2016 U.S. Dist. LEXIS 101553 (D.V.I. Aug. 3, 2016), the Court stated:

> A court manages its cases and controls the scheduling of

---

alternative to travel, as experience with such depositions in the aftermath of the September 2017 storms has shown. [ECF 214] at 2 n.2, 4, 5.

[7] Plaintiff's reply fails to cite to any case or statutory authority whatsoever, and merely denigrates defense counsel for an alleged lack of professionalism and collegiality, and an inability to understand "catastrophic case preparation." [ECF 219]. Plaintiff then draws a contrast between his and his witnesses' limited means and the "millionaire" defendants whose litigation expenses are paid by insurance companies. *Id.* at 8. Finally, plaintiff suggests that defendants may participate in the depositions by video conference at plaintiff's counsel's St. Thomas office. *Id.* at 6, 8, 12.

discovery activities in part by entering scheduling orders under Federal Rule of Civil Procedure 16(b). FED. R. CIV. P. 16(b). Such orders may be modified "only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).

Federal Rule of Civil Procedure 6 allows a court for good cause to extend the time for an act to be done (1) if "the request is made [] before the original time or its extension expires," or (2) when a motion is made beyond the specified deadline "if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1). "The phrase 'excusable neglect' 'encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.'" *Glasgow v. Veolia Water N. Am.,* 2011 U.S. Dist. LEXIS 87292, at *9-10 (D.V.I. Aug. 5, 2011) (quoting *Pioneer Inv. Servs. v. Brunswick*, 507 U.S. 380, 388 (1993), and finding a delay of a few days due to a miscommunication between counsel and staff was a "close call" but was excusable). The "excusable neglect" inquiry depends on all of the relevant circumstances. *In re O'Brien Env. Energy, Inc., 188 F.3d 116, 125 (3d Cir. 1999)* (citing *Pioneer, 507 U.S. at 395*).

While some courts distinguish between discovery depositions, which must be completed before any discovery deadline, and trial depositions, which may be taken after the close of discovery,[8] the Federal Rules of Civil Procedure make no such distinction. *See* FED. R. CIV. P. 30.[9] . . . Federal Rule of Civil

---

[8] *See, e.g., RLS Associates, LLC v. United Bank of Kuwait,* 2005 WL 578917, at *6 (S.D.N.Y. Mar. 11, 2005) ("the majority of courts" have made what "can only be described as a federal common law distinction between "discovery depositions" and "trial depositions" (or alternatively, "preservation depositions"), and have held the latter category permissible even after the discovery deadline had passed."); *see also Rains v. Bnsf Ry. Co.*, 2010 U.S. Dist. LEXIS 143225 *2 (N.D. Tex. Apr. 1, 2010) (where "a witness cannot appear due to an unforeseen circumstance such as illness, courts allow depositions beyond the discovery deadline to preserve the witness's testimony for trial"); *Spangler v. Sears, Roebuck & Co.*, 138 F.R.D. 122, 124 (S.D. Ind. 1991) (finding that after the discovery cut-off a party may not engage in any further discovery, but the discovery cut-off "does not prevent a party from memorializing a witness' testimony in order to offer it at trial."); *Estenfelder v. Gates Corp.*, 199 F.R.D. 351, 354 (D. Colo. 2001) (trial depositions are not discovery depositions).

[9] *In re Tutu Water Wells Contamination Cercla Litig.*, 189 F.R.D. 153, 157, 1999 U.S. Dist. LEXIS 10139 (D.V.I. Jun. 16, 1999) ("this Court is unable to recognize a distinction between a *de bene esse* deposition and one used for discovery."). *See also Harris v. CRST VAN Expedited, Inc.,* 2015 U.S. Dist. LEXIS 6619 (N.D. Iowa Jan. 21, 2015) (barring depositions from use at trial where plaintiff deposed his own doctors outside the discovery period and without the presence of defense counsel)); *Settles v. Livengood*, 2015 U.S. Dist. LEXIS

> Procedure 26(c) permits parties to seek an order precluding certain discovery, including depositions, and to protect such parties from "undue burden or expense." FED. R. CIV. P. 26(c). A party seeking a protective order must demonstrate good cause for such an order. *Id.*
>
> Finally, where a witness is "unavailable," the witness' deposition may be used at trial. FED. R. CIV. P. 32(a)(4). The published Policies and Procedures of the district court trial judge provide, however, that where a witness is to appear at trial by deposition transcript or by videotape, designations of the relevant testimony must be provided to the other parties no later than two weeks prior to trial, so that counter-designations may be made and any evidentiary disputes can be resolved in advance of trial.[10]

*Figueroa*, U.S. Dist. LEXIS 101553, at *3-6. The principles discussed in *Figueroa* are equally applicable here.

Parties do not have an automatic right to take trial depositions and a court has the discretion to determine if they should proceed. *See In re Asbestos Prods. Liab. Litig.* 2013 U.S. App. LEXIS 13633, *8-9 (3d Cir. Jun. 26, 2013) (citing, *inter alia, Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362 (11th Cir. 2002), which found it was not an abuse of discretion to deny a request for trial depositions after the close of discovery). Further, "[f]actors to be considered in granting a *de bene esse* deposition after the close of discovery are: the unavailability of the witness to appear at trial; whether the deposing party knew of the information the potential witness would testify to prior to the deposition; and whether the opposing party will be prejudiced by granting the

---

57833 (E.D. Mo. May 4, 2015) ("[T]here is no right to a 'trial deposition' separate and apart from the 'deposition' rules expressly found in Rules 30 through 32. Parties who make the tactical decision not to preserve deposition testimony during the discovery phase take the risk that the testimony will not be presented if the witness is unable or unwilling to appear at trial.")

[10] *See* Section III. L. 5-6, The Hon. Curtis V. Goméz, *Policies and Procedures* (Feb. 2, 2016), http://www.vid.uscourts.gov/sites/vid/files/CVG_Policies_and_Procedures.

deposition -- with special attention given to the question of prejudice." *Coface Collections NA, Inc. v. Newton,* 2012 U.S. Dist. LEXIS 182591, *4 (D. Del. Dec. 28, 2012) (citing *Estate of Gee v. Bloomington Hosp. & Health Care Sys., Inc.*, 2012 U.S. Dist. LEXIS 29404, at *6 (S.D. Ind. Mar. 6, 2012)).

### III. DISCUSSION

A. <u>Plaintiff's Fact Witnesses</u>

Plaintiff wishes to take videotaped depositions of fact witnesses Joni Pierson, Julia Fulton and Jillian Majerus, all of whom reside in Iowa. As noted above, defendant previously deposed these witnesses in Iowa in January 2017, and plaintiff's counsel questioned them as well. *See* [ECFs 214-4, 214-5, 214-6]. Plaintiff now claims, however, that "the jury would be better served by viewing a videotape deposition" and that it was "premature" to have asked these witnesses "trial questions" in January 2017. [ECF 213]. Defendants argue that requiring them to bear the additional expense and burden of returning to Iowa would be "wholly inequitable." [ECF 214] at 4.

Given that these three witnesses are expected to testify primarily about events that took place in March 2014, plaintiff has shown no reason why asking them about those events in 2017 would have been premature. Further, while plaintiff might prefer that their testimony be offered via videotape, he provides no authority for the implicit proposition that the jury would be unable to glean the relevant information from their depositions through the presentation of written transcripts. Plaintiff presumably knew what they would testify about, knew that they resided outside the subpoena power of the Court, and had the opportunity to preserve their testimony when the parties were in Iowa for depositions. That plaintiff chose not to avail himself of that

opportunity while discovery was ongoing was a risk plaintiff took, and the Court will not require defendants to absorb the additional time and expense of retaking those depositions.

    B.    <u>Plaintiff's Treating Physicians</u>

With respect to plaintiff's treating doctors in Iowa, the Court observes that all are outside the Court's subpoena power, and accepts, for purposes of this motion, plaintiff's contention that all are "busy."[11] According to plaintiff, however, he made a deliberate decision not take these depositions during the discovery period.

Plaintiff asserts that he provided defendants with information regarding the doctors' opinions in June and July 2017, [ECF 213] at 2, but did not mention deposing those doctors until late January, 2018. *Id*. at 3. According to plaintiff, defense counsel immediately responded that she would not agree to the depositions and that "Plaintiff would have to take up the matter with the court." *Id.* at 4. Plaintiff waited for over a month thereafter before filing this motion. In addition, plaintiff did not previously raise this issue with the Court in connection with scheduling discovery in the case. For example, plaintiff could have argued for a two-phased discovery schedule that would have allowed these particular depositions to be taken later in the pretrial process. But, plaintiff did not seek this type of schedule.[12] Rather, plaintiff now asserts that he simply "chose not to incur the expense to take these depositions until all efforts at settlement had

---

[11] One of plaintiff's doctors, Thomas Hansen, M.D., is undergoing treatment for cancer and is moving his practice from Iowa to Tennessee in mid-April 2018. *See* [ECF 219-8]. In his affidavit, Dr. Hansen asserts that he cannot travel by air due to his own medical condition. *Id*.

[12] In fact, in his April 2016 pretrial discovery memorandum, plaintiff recognized that if the matter went to trial, "it will be necessary to perpetuate the testimony of Plaintiffs' [sic] current treating physicians, all of whom reside in Iowa. Additionally, Plaintiffs [sic] anticipate taking the deposition of Sr. Joseph Minton. . . ." [ECF 33] at 6. Plaintiff went on the say: "Defendants suggested in the Joint Proposed Scheduling Plan that all treating physicians and medical providers be subject to deposition within the time allowed for expert witness depositions and shall not be subject to the fact witness deadline. Plaintiff agrees with this suggestion." *Id*. at 6-7. At no time did plaintiff suggest that an additional time period to take trial depositions would be necessary.

been exhausted." *Id*. at 3. Plaintiff thus took a risk that neither defendants nor the Court would agree to extend the time for completing depositions. *See Chrysler Int'l Corp.*, 280 F.3d at 1362 n.8 ("So, parties who delay in taking a needed deposition and who assume that a district court will draw (when the Rules do not and if the pretrial order does not) a distinction, for pretrial scheduling purposes, between different kinds of depositions assume a risk: they cannot count on the trial court's allowing a deposition to be taken closer to the trial date.").

Regarding the argument that his treating doctors' depositions could not have been taken when the parties were in Iowa for other depositions, plaintiff reasons that (1) the medical depositions "would have had to be retaken later to reflect treatment that [plaintiff] has received since January 2017,"[13] and (2) arguing otherwise demonstrates a "lack of understanding of how catastrophic injuries cases are processed in the legal system." [ECF 219] at 9-10. Plaintiff argues further that he needed to take these depositions at the latest possible time to provide the jury with plaintiff's up to date medical picture.[14] *Id*. at 10. Plaintiff has not identified, however, any rule or authority that reflects support of this practice, and the Court is not aware there exists a different set of discovery rules applicable to catastrophic injury cases.

---

[13] Plaintiff does not explain why he made no effort to depose the emergency room physician Joseph Minton, M.D., during the discovery period. The argument about ongoing treatment does not apply to him, and his testimony could have been obtained at an earlier date.

[14] *See* [ECF 219] at 9-10. Plaintiff has also taken the seemingly inconsistent position, however, that as of at least April 2016, he had "reached maximum medical recovery," and that defendants thus had no reason to delay conducting an independent medical examination. [ECF 34] at 4.

Next, plaintiff argues that Local Rule of Civil Procedure 26.3(b) obligates defendants to participate in the expert trial depositions, absent their agreement and after discovery has closed. [ECF 213] at 5. Local Rule 26.3(b) provides:

> (b) Video Taping of Expert Discovery
>
> Absent good cause shown, if a trial date has been set at least forty-five (45) days in advance, and the testimony of an expert witness has not been videotaped, and the witness is unavailable for trial, the parties will be required to proceed.

LRCi. 26.3(b). Plaintiff argues that under the language of this local rule, "**Defendants were obligated to agree to these depositions.**" [ECF 213] at 6 (emphasis in original). However, plaintiff offers no authority for reading the rule in this fashion, and the Court is aware of none. A more reasonable reading of this rule is that, in the absence of good cause (such as a sudden illness), in cases involving the unavailability of an expert witness whose testimony has not been videotaped, the parties will be required to proceed to trial without such testimony, so long as the trial date had been set at least 45 days in advance. The Court is not persuaded that the rule generally obligates defendants to agree to depositions outside the discovery period.

Finally, plaintiff argues that defendants can economically participate in all of these depositions by video conference from plaintiff's counsel office on St. Thomas. [ECF 219] at 8. Defendants, however, have not had an opportunity to address deposing these witnesses by video conference, as plaintiff only raised this in reply. Previously, defendants had argued only that participating by telephone would have put counsel at a disadvantage to counsel who was present at the questioning. [ECF 214] at 8. Nevertheless, the Court views this option as one that should be given serious consideration, in the interests of relieving defendants of the burden and expense of additional travel.

In sum, the Court understands plaintiff's initial desire to save on expenses in the hope of settlement, and to provide videotaped, as opposed to written, depositions of unavailable witnesses to the jury. These aspirations do not, however, give plaintiff *carte blanche* to ignore the Court's scheduling orders, or excoriate opposing counsel for not agreeing with plaintiff's plan. The Court does not find, in the circumstances presented, that plaintiff has demonstrated his entitlement to an order compelling defendants to participate in trial depositions of any of these witnesses in Iowa or Tennessee, given that some were previously deposed, and that discovery is now closed. This conclusion does not mean, however, that plaintiff is barred from taking any of these depositions in the event defendants agree to participate by video conference, or plaintiff pays defendants' reasonable attorney's fees and expenses incurred in connection with such depositions. *See, e.g., Kravchak v. Alfred I. Dupont Inst. of the Nemours Found.*, 1995 U.S. Dist. LEXIS 3948, *4 (E.D. Pa. Mar. 24, 1995) (conditioning the taking of a trial deposition on (1) opposing counsel's being given a brief opportunity to question the witness before the trial deposition, and (2) opposing counsel's expenses to attend being covered).

## IV. CONCLUSION

Based upon the forgoing discussion, and the premises considered, it is hereby ORDERED that the motion to compel defendants to participate in trial depositions in Iowa and Tennessee is DENIED; however, plaintiff shall be permitted to take such depositions if (1) defendants agree to participate by video conference from St. Thomas; or (2) plaintiff reimburses defendants for their reasonable attorney's fees and expenses incurred in connection with travel for the depositions.

**Dated:** March 28, 2018        S\_____
                                            **RUTH MILLER**
                                            United States Magistrate Judge